The first case called for oral argument is People v. Chipman. I'll see whenever you're ready to make the case. May it please the court. My name is Amy Rose, and I am with the Office of the State Appellate Defender. I represent Richard Chipman. Today I will first discuss why the trial court erred when it denied the state's motion for a fitness examination of Mr. Chipman. The facts are particularly important in this case. Mr. Chipman visited the VA hospital to receive treatment for his addiction to fake crack. Six days later, Mr. Chipman was arrested for possession of crack cocaine. On that day, Mr. Chipman ventured to Illinois from Missouri to purchase what he believed was fake crack. Almost immediately after the sale, with whom Mr. Chipman believed was a confidential source, Mr. Chipman is arrested and the substance is field tested and came back positive for crack cocaine. This was a surprise to Mr. Chipman, since he believed that he was buying fake crack. Mr. Chipman believed the fake substance was switched with real crack cocaine in an effort to arrest him for possession of crack cocaine. Mr. Chipman decided to represent himself. The first prosecutor assigned to his case noted that he had a bona fide doubt as to Mr. Chipman's fitness to stand trial, and the next prosecutor assigned to Mr. Chipman's case first dismissed that notion. Once the prosecutor reviewed the previous prosecutor's notes and correspondence, she had a bona fide doubt and filed a motion for a fitness exam of Mr. Chipman. So now there are two prosecutors in agreement that a fitness exam needs to be done on Mr. Chipman. Two days after the motion was filed, the court conducted a hearing on that motion. During this hearing, the state argued that based on emails and other correspondence that she reviewed sent by Mr. Chipman to the previous prosecutor, the state had a bona fide doubt as to Mr. Chipman's fitness to stand trial. The state argued it was concerned that Mr. Chipman would not be able to assist in his defense, let alone proceed pro se. Further, the state actually believed that if the motion was denied and Mr. Chipman did not undergo a fitness exam, that this would provide a right issue for appeal. Now in his argument against the motion, Mr. Chipman stated that he had a problem with a fake substance, he had been under surveillance for years, and he went to the VA to get help for his addiction, and six days later he was arrested. Mr. Chipman even stated that he had no interest in going to rehab because he knew that his addiction was to something that was not real. Mr. Chipman also mentioned in his argument a report from the VA from the previous year that diagnosed him as a paranoid schizophrenic, and he even sent that report to the court. Mr. Chipman, of course, wasn't happy with this report, and he believed that all the VA was interested in doing was just pump him full of psychotropic drugs. At the end of his argument against the motion, he stated that he would forego an appeal if he would not have to submit to a fitness exam. The court subsequently denied the state's motion for a fitness exam and ordered that the case be set for trial two weeks later. Both the United States and Illinois constitutions state that the conviction of a person who is incompetent to stand trial violates the Due Process Clause. This court must review the issue of the trial court's denial of the state's motion for a fitness exam for abuse of discretion. In Illinois, a defendant is presumed fit. There are a number of factors which the court must consider to determine whether a bonafide doubt of defendant's fitness exists. These factors include defendant's irrational behavior, defendant's demeanor at trial, and any medical opinion on the competency to stand trial. There is no doubt that Mr. Chipman exhibited irrational behavior. He believed that he was under surveillance by local, state, and federal authorities. He honestly believed that he had an addiction to a fake substance, and he believed that the VA alerted the authorities to his addiction, and that was the cause of his arrest. Second, there is a medical opinion by the VA that diagnosed him as a paranoid schizophrenic. Even if those factors did not exist, a United States Supreme Court case held that while a defendant's demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue. It would have been in the sound discretion of the court to order a fitness exam, particularly because Mr. Chipman was prosaic. As such, the court should have granted the state's motion for a fitness exam. Because the trial court erred when it denied the state's motion for a fitness exam, Mr. Chipman is asking this court to reverse his conviction and remand to the trial court for further proceedings. Does the court have any questions? This is a discretionary decision, right? Correct. You're a trial judge. You have to make an assessment based on everything, the record before you, demeanor, everything. The three of us have all been through that for a number of years. If Mr. Chipman articulates a reason coherently and the trial judge is sitting there assessing him as well as the strength and coherence of his arguments, as well as taking into account the fact that the assistant state's attorney says this person needs to be examined, other than his obstreperousness in the subsequent trial, what your basic argument is, his ideas are just out of reality so that in and of itself should have tipped the scale. Is that a fair assessment of your argument? Well, I think there should have been more substance to the hearing that was conducted on the state's motion. In the record, it reflected that the court held the motion. The state argued that simply I looked at the file based on the emails and correspondence that Mr. Chipman had with myself and the previous prosecutor. We think there needs to be a fitness exam. And what the trial judge did was just ask my client, Mr. Chipman, and knowing that he had some mental health issues and was able to allow him to make the decision, granted the judge weighed both sides, but it was kind of troubling that he asked Mr. Chipman and that's kind of all he used was there wasn't any evidence presented and just allowed Mr. Chipman. But no one was precluded from presenting any evidence. You're correct. Having read the briefs, it sounds like this was an obstreperous defendant as opposed to, in trial, as opposed to a defendant who was in another zone of reality. Is that your assessment also? Or was it just someone who was hard to handle? And didn't have a grasp and doesn't have a grasp on reality. And doesn't have a grasp. Okay. Are you just standing on your second issue? No, I'm going to go ahead and argue that one. Okay. All right. I would like to next argue that the trial court's treatment of Mr. Chipman during the trial improperly influenced the jury and denied him a fair trial. The right to an impartial jury is so fundamental to due process that any infringement on that right requires reversal by a reviewing court. Illinois courts have long upheld that the right of an accused to a fair and impartial trial by jury, free from influence or intimidation by the trial court, is fundamental. Throughout Mr. Chipman's trial, the court either made belittling remarks or threats of contempt of court, brought in extra bailiffs, all in the presence of the jury. Mr. Chipman did not pose a physical threat to warrant these drastic measures. The court has held that the trial judge's belittling remarks to defense counsel in the presence of the jury deprives the defendant of a fair trial. And regardless of the proof against the defendant, the defendant is entitled to a fair trial that is free from improper and prejudicial comments on the part of the trial judge. Most of the comments the trial judge made were situations where the defendant was questioning a witness, and instead of asking questions, he was making a speech, which all of us have seen happen by pro se people lots of times because they just don't understand. Would you agree with that, that that was the main thing that kept happening and building up? And in fact, there were objections too from the state most of those times. Right. The judge was ruling on objections and then trying to tell the defendant, ask a question. You're making a speech, ask a question. Correct. Okay. In Mr. Chipman's case, the remarks made in front of the jury have more of an impact because those remarks were actually made to the defendant himself, the one on trial, not to defense counsel. This makes it even worse. There is a big difference between making the attorney look bad versus the person that is actually on trial. The state argues that this is a forfeited issue. However, Mr. Chipman's case warrants a relaxation of the waiver rule. The exception for the waiver rule is when counsel's objection would have fallen on deaf ears. First, Mr. Chipman was threatened with contempt of court. So it's pretty clear that if Mr. Chipman had objected to this, the objection would have fallen on deaf ears. Second, Mr. Chipman did mention to the court at the beginning of his second day of trial that he felt uncomfortable with the comments that were being made. And the court said that the comments were necessary to keep the trial running efficiently and smoothly. Thank you, counsel. Counsel? May it please the court, counsel? My name is David Sanchez. I'm here on behalf of the people. In this case, the defendant is challenging the court's ruling on a motion for a fitness examination. Now, a court is only required to order a fitness examination when it has notice of facts sufficient to raise a bona fide doubt of the defendant. In this case, the court did not have sufficient facts giving rise to a bona fide doubt of the defendant's fitness. When the state presented its motion for a fitness examination, the only thing that was stated to the judge was, based on email correspondence that our offices had with the defendant, we believe that there is a bona fide doubt as to his ability to assist with his own defense. And the judge then asked the defendant what he thought of this motion, and the defendant adamantly did not want to undergo a fitness examination. Instead, he just wanted to keep the trial moving along. Did the state attach these emails to its motion? No. And were they offered as evidence? Do they appear in the record anywhere? They do not appear in the record. I don't know what the substance of the emails were. The record shows that when the state presented this motion to the court, they did not inform the judge of what the content of the emails were. So, as far as the record goes, we don't know. We don't know what the emails actually stated. So those were the only grounds on which the court could make its determination. The defendant, in his reply brief, makes clear that he's not challenging the fact that the court abused its discretion by not ordering a sua sponte fitness hearing. So, if we're just talking about this ruling he made on this motion for a fitness examination, all that was presented was these statements about emails that were never presented. So the court, based on that, cannot have abused his discretion. That wouldn't have been, that wouldn't have rised to the level of an abuse of discretion. The VA report that the defendant mentions was not tendered to the court at this hearing. In fact, it was given to the state in response to a discovery motion, and it was filed with the court subsequent to the date of the hearing on the state's motion for a fitness examination. So there simply just wasn't enough presented on this motion to justify granting a fitness examination. And the court, it goes without saying, had ample opportunity to observe the defendant, to observe his demeanor, to see what kind of state of mind he was in. And all that fitness is concerned with is whether he is able to understand the nature and the purpose of the proceedings against him and to assist in his defense. And nothing that he said suggested that he could not do any of those things, although his defense was probably not the most persuasive defense. But as a pro se defendant, that's what he wanted to go forward with. Moreover, he invited the error. He asked the court to proceed in one way. The court granted him his position, and now he's appealing it. So since he invited the error, he's waived it on appeal. The state has not similarly waived its position by saying at one point that the state thought he had a bona fide doubt and now is arguing against that. We're only saying that the trial court didn't abuse its discretion. That's all that the state is saying on appeal, and the state isn't appealing from a judgment that we claim to be error. As far as the comments that were made by the judge to the defendant throughout the trial, comments made by a judge to a defendant only constitute reversible error when the comments constituted a material factor in the conviction or were such that an effect on the jury's verdict was the probable result. How common is it that the state moves to have a defendant assessed for fitness? How common? How common? I wouldn't know how common that is, but I assume that it's usually a defense motion. I will grant that. So I think the state was just being overly cautious, exercising an abundance of caution, especially given the fact that he was a pro se defendant. The state didn't want to appear that they were just having a party because of the fact that he was going to be presenting a defense that wasn't going to be very persuasive to a jury. So I think that they were concerned about it coming up on appeal, but of course it was within the judge's discretion to determine whether a fitness examination was required, and certainly with what he was presented with, he did not abuse that discretion. State's attorneys and public defenders deal with people who are not necessarily the paragons of stability on both sides. The fact that the prosecuting authority raises this motion, does that put the trial judge in a situation of taking a, you know, of his or her discretion as to whether that motion should be granted since this is the person, this is the agency that's in charge of the prosecution and not the defense, and a finding of unfitness would, as a practical matter, impair that prosecution? Correct. Right. I think the judge had, he had observed the defendant, and he, you know, the question is whether a bona fide doubt had arisen, and I don't think that the state, on its motion, gave the court enough on which to determine that a bona fide doubt had arisen. And so I would argue that, first of all, that the court did not abuse its discretion, and secondly, it had, it could observe the defendant, and it could listen to the arguments that he was presenting, and I'm sure that if the court had this concern that you mentioned, that it could have taken steps to probe the matter a little bit more and get the defendant a fitness examination. But I don't think, or the record shows that such a fitness examination wasn't necessary. We're talking about a bona fide doubt. A bona fide doubt doesn't arise simply because the state says it exists. It doesn't arise simply because the defendant says it exists. It's a factual determination. The court's going to take a number of considerations, a number of factors into consideration, and some of those have been listed in People v. Brown, the Illinois Supreme Court, and they're going to look at his irrational behavior. They're going to look at his demeanor. They're going to look at his representations that he makes as to his competence. But no single factor raises a bona fide doubt as to his fitness to stay in trial. And so what factors is the defendant citing? At the trial, he gave an opening statement. He examined witnesses. He made a closing argument. As far as assisting in his defense, in fact, participating 100 percent in his defense, I mean, he did participate in the various stages of the trial. He did participate in various stages of the trial. And I would note that a particular note was when they were choosing jurors on voir dire, he wanted to ensure that he had a diverse jury. I mean, he raised a Batson challenge, and these are challenges that you don't often see pro se defendants making. He was more than able to assist in his own defense. So I think that the court was apprised of all of that, of all those facts. Thank you, Counsel. Counsel? One of the things, back to the improper treatment of Mr. Chipman in front of the jury, one of the things that the trial judge could have done that would have presented less prejudice in front of the jury would have been to have a sidebar with Mr. Chipman, the state's attorney, to diminish the effect of the way he was talking to Mr. Chipman in front of the jury. Back to Mr. Chipman and his behavior, one of the signs of a paranoid schizophrenic is that they can communicate intelligently, but that shouldn't excuse the fact that he seemed okay because that would, because he seemed okay during the hearing and the previous preliminary hearing and arraignment, that that made him capable of, gave him the fitness to stand trial and actually go pro se. Do you agree with Mr. Sanchez that at the time the trial court denied the motion, the trial court had not seen the veteran's report, that he was a paranoid schizophrenic? I agree. Okay, and you're not raising the claim that the court should have, sua sponte, ordered a fitness exam? Correct. So how does that play in? How does, if the trial judge didn't even know that he was a paranoid schizophrenic or had been diagnosed as that at the time of the motion hearing, how does that play into this at all then? Well, that doesn't, he, Mr. Chipman actually submitted the report from the VA as part of his discovery material. Now, it wasn't reflected in the record and it's unknown by both parties whether or not the court actually reviewed that before. And it's not in our record to review, is it? The report itself? Yeah. Yes, it is. It is, okay. It is. But once the judge heard Mr. Chipman argue against the state's motion, that judge learned very quickly that this was somebody that was alleging that he was actually addicted to a fake substance. That's not something that you hear very often, especially from somebody that's a rational person. Mr. Chipman also thought that people were constantly following him, that these federal authorities had an interest in him, who actually only purchased a tenth of a gram of crack cocaine, and this was his first dealings with a drug crime. There was never any indication that he sold drugs, was involved with, you know, much sale of drugs. And then he actually believed that the police would switch. He actually believed that he thought he bought something that was fake, and that the police would actually switch something, switch the real crack for the fake crack, just so they could bust him for possession of crack cocaine. Do you have to be a paranoid schizophrenic to make that argument? Probably not, but I think... You think that's an unusual argument that defendants make in drug cases? The police switched it. That's true, Your Honor. Now, in the state's brief, they argue that Mr. Chipman is a stop from raising this issue on appeal. Well, this principle applies to the state, just as it would apply to Mr. Chipman. In other words, the state is the party that argued for the fitness exam, and now, on appeal, the state's arguing against it. The state argued that a bona fide doubt was not raised. However, there was a bona fide doubt, as evidenced by the very motion that the state filed. While the state argued that Mr. Chipman cannot claim that he should have received a fitness exam now, neither can the state argue that a bona fide doubt did not exist, since the state was the one that filed the motion. Mr. Chipman is asking this court to reverse his conviction and remand to the trial court for further proceedings. Thank you, Your Honor. Thank you. I appreciate the briefs and arguments of counsel. We'll keep the matter under advisement. I think the next oral argument is scheduled for 10 o'clock. We'll take a short recess. Thank you.